**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **KAREEM JONES** | : | **NO. 10-307** |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**                                                                                                 MAY 30, 2012

      The grand jury indicted Kareem Jones on May 5, 2010 on five counts of violating 21 U.S.C. §841(a), one count of violating 18 U.S.C. §922(g) and one count of violating 18 U.S.C. §924( c ). The alleged underlying events that led to these charges were two controlled narcotics purchases by an informant who was working with FBI law enforcement personnel on February 3 and 9, 2010, and circumstances occurring in connection with a traffic stop by police on February 27, 2010. Mr. Jones, at times represented by counsel and then - - at his persistent demand - - representing himself (with back-up counsel available), has presented a host of challenges to his prosecution, several of which have prompted evidentiary hearings, oral argument and extensive briefing and other submissions.

      Mr. Jones asks the Court to exclude from admission at trial certain physical evidence seized from him on February 27, 2010. At that time, Philadelphia police officers took eight packets of heroin from Mr. Jones during an initial pat-down search on the street and, later at a police station, a .38 caliber revolver was found in his pants leg along with additional narcotics and cash. Mr. Jones argues that the initial "stop and frisk" violated his Fourth Amendment

protections. In particular, Mr. Jones concentrates his argument on an interpretation of Minnesota v. Dickerson, 508 U.S. 366, 375-378 (1993), to argue that an officer who frisks a person must know the nature of an object s/he feels during the frisk in order to validate the subsequent warrantless seizure of the item if it is to be used at trial.

The Court held an evidentiary hearing on the suppression motion on November 15, 2011 and oral argument approximately six weeks later, on December 28, 2011. Post-hearing and post-argument briefing was invited. Based upon the evidence presented and the controlling case law, the Court denies the motion.

**DISCUSSION**

Philadelphia police officers Stephen Haraszkiewicz and Eric Daniels testified credibly under oath and gave the following account of events that occurred on February 27, 2010.

Early that morning, at approximately 2:40 a.m., Officer Haraszkiewicz, in uniform and in a marked police car, was backing up a fellow officer who had stopped a red 1993 Lincoln for running a red light. Mr. Jones, who was a passenger in the Lincoln, alighted from the car, looked and briefly moved in Officer Haraszkiewicz's direction but then fled away from the officer. When Mr. Jones did not heed Officer Haraszkiewicz's command to stop, the officer gave chase. Officer Haraszkiewicz caught up with Mr. Jones about a block away after Mr. Jones's efforts to elude capture were to no avail and Mr. Jones fell on the icy street. As Mr. Jones, who was on the ground, struggled, Officer Haraszkiewicz, now assisted by Officer Daniels, put handcuffs on Mr. Jones and got him onto his feet.

At the time of these events, Mr. Jones was clothed in multiple layers of clothing, including two pairs of pants, long underwear, a sweatshirt and a "hoodie" jacket. Once Mr.

Jones was handcuffed and upright, Officer Haraszkiewicz conducted a brief pat-down to check for weapons. The officer felt something "bulky" in the pocket of the hoodie, but did not immediately recognize the objects other than to believe that neither that particular bulge - - nor the other bulges in Mr. Jones's clothing - - appeared to be a gun. Lest the bulges prove to be some other potential weapon, however, Officer Haraszkiewicz took them from Mr. Jones's person. Among the items removed from Mr. Jones's clothing during the on-site pat-down were eight (8) packets of heroin. Mr. Jones was then taken to the police station at 24th and Wolfe Streets where, now under arrest for narcotics possession, he was again searched. This subsequent search occurred because, when Mr. Jones asked to use the men's room, Officer Daniels, who was then monitoring Mr. Jones, saw Mr. Jones trying to manipulate something that appeared to be inside one of his trousers pant legs. Investigating based upon his observations, Officer Daniels found a loaded .38 caliber Taurus revolver inside Mr. Jones's long underwear and sock. The gun was seized, and the subsequent additional search led to the further recovery of 2 baggies of crack cocaine, 24 blue oval pills and $483 in cash.

      Commencing with the car stop that set the events in question in motion, the Court concludes that the evidence supports the finding that the stop was valid, given that the police had sufficient reason to believe that a traffic violation had occurred. Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Delfin-Colina, 464 F.3d 392, 396-97 (3d Cir. 2006). Stopping and detaining the Lincoln and its occupants constituted a Fourth Amendment "seizure." United States v. Hensley, 469 U.S. 221, 226 (1985); United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). The Lincoln having been stopped, the officers were permitted to require the occupants of the car, both driver and passengers, to get out of the vehicle. Maryland v. Wilson,

519 U.S. 408, 410 (1997) (extending Pennsylvania v. Mimms, 434 U.S. 106, 110-111 (1997), to passengers in a stopped vehicle). Once lawfully instructed to get out of the car, Mr. Jones's subsequent furtive conduct reasonably caused Officer Haraszkiewicz to consider him with concern and suspicion. Mr. Jones's flight was reasonably interpreted by the officer as reason to give chase out of concern that Mr. Jones could be engaged in criminal activity. Furthermore, under all the circumstances credibly recounted by Officer Haraszkiewicz during his testimony, including the fact that Mr. Jones tried to hide under a car on the icy street as he ran from the officer, the Court concludes that Officer Haraszkiewicz was justified in stopping Mr. Jones and detaining him for further investigation. United States v. Arvizu, 534 U.S. 266, 273-74 (2002); Unites States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003). See also Terry v. Ohio, 392 U.S. 1 (1968); United States v. Moorefield, 111 F.3d 10, 14 (3d Cir. 1997).

Once detained, Mr. Jones presented Officer Haraszkiewicz with equally sufficient reason to conduct at least a limited pat-down to search for weapons. Confronted by the multiple layers of clothing Mr. Jones was wearing, Officer Haraszkiewicz's inability to specifically and immediately identify by touch the object(s) causing the bulges in Mr. Jones's clothing, although he was not prepared to say there was a gun and equally unprepared to rule out the possibility that the bulges were some other type of weapon, Officer Haraszkiewicz was permitted by Terry to conduct a further search at the site to ascertain whether Mr. Jones was carrying a weapon of some other type. Contrary to Mr. Jones's argument, the officer was not constrained by Minnesota v. Dickerson because, unlike the facts in Dickerson, he had not persisted in frisking Mr. Jones after having concluded that he had no weapon in his possession. Rather, the Court concludes that Officer Haraszkiewicz had not transgressed the limits of the Fourth Amendment at the time he

4

finished his on-the-street pat-down search of Mr. Jones as a result of which he found the bags of heroin.

Accordingly, for the foregoing reasons, the Court will deny the suppression motion in the accompanying Order.

BY THE COURT:


  /s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge